UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

INFORMD, LLC

VERSUS

DOCRX, INC. AND BRIAN WARD

MISCELLANEOUS ACTION

NO. 16-83-JJB-EWD

**RULING AND ORDER ON MOTION TO COMPEL AND MOTION TO QUASH**

Before the court is a Motion to Compel Appearance for Deposition of Non-Party and responses to Subpoena for Production of Documents and for Order to Show Cause (the "Motion to Compel")[1] filed by DocRX, Inc. and Brian Ward (collectively, "Defendants").  P. Cosmo Smith ("Smith") has filed an Opposition to Motion to Compel and Cross-Motion to Quash Subpoenas (the "Motion to Quash"),[2] and Defendants have filed an Opposition to the Motion to Quash.[3]  For the reasons set forth herein, the Motion to Compel[4] is **GRANTED IN PART AND DENIED IN PART**.  The Motion to Quash[5] is **GRANTED IN PART AND DENIED IN PART**.

I.   **Background**

This miscellaneous action was originally instituted in the United States District Court, Eastern District of North Carolina by Defendants seeking an order compelling non-party Smith to: (1) produce documents sought via a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Document Subpoena"); (2) appear for a deposition pursuant to a Subpoena for a deposition (the "Deposition Subpoena"), and (3) appear and show cause why he should not be held in contempt for noncompliance with the Deposition

---

[1] R. Doc. 1.

[2] R. Doc. 8.

[3] R. Doc. 9.

[4] R. Doc. 1.

[5] R. Doc. 8.

1

Subpoena.[6]  In response to the Motion to Compel, Smith moved to quash both the Document and Deposition Subpoenas (collectively, the "Subpoenas").[7]  The miscellaneous matter was subsequently transferred to this court.[8]

The underlying action giving rise to Subpoenas is a breach of contract and declaratory judgment action against Defendants filed by InforMD, LLC ("InforMD"), *InforMD, LLC v. DocRX, Inc. and Brian Ward*, No. 13-533, United States District Court, Middle District of Louisiana (the "Underlying Action").  InforMD's Complaint focuses on alleged breaches of a non-solicitation provision in a Confidentiality, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement (the "November 2011 Agreement") and proper interpretation of provisions in the November 2011 Agreement that allegedly require InforMD to pay DocRX and Ward a certain percentage of gross profits on specified revenue.[9]  In response, Defendants filed a counterclaim against InforMD, IITWI, LLC, Daigle, Massengale, Ray, Guidry, Hebert, and Patin (the "InforMD Parties") for their alleged failure to pay (or to underpay) 15% and 25% payments "on certain relevant transactions" as provided for in the November 2011 Agreement and failing to share information that would allow DocRX to determine the validity of payments (if any) made each month.[10]  Relevant to the instant motions, Defendants assert that the Settlement Documents

---

[6] *See*, Motion to Compel, R. Doc. 1.

[7] R. Doc. 8.  As an initial matter, the court notes that The Subpoenas were issued to P. Cosmo Smith rather than OHA (which the court understands is now a dissolved entity).  R. Doc. 2-2.  Although Mr. Smith complains that the Deposition Subpoena failed to include a list of topics, based on the Subpoenas as issued, Defendants seek to depose Mr. Smith as an individual.  *See also*, R. Doc. 9, p. 8 ("This is not a 30(b)(6) deposition….").

[8] R. Doc. 10.

[9] The November 2011 Agreement states that the parties "entered into a Settlement Agreement dated September 8, 2011, on a *pro tanto* basis, a copy of which is attached hereto and incorporated herein by this reference." Underlying Action, R. Doc. 1-4, ¶ A.  The parties sometimes refer to the September 8, 2011 letter and the November 2011 Agreement, collectively, as the "Settlement Agreement."  For ease of reference – and without considering whether and to what extent both documents may or may not constitute the "Settlement Agreement," – the Court herein refers to the November, 2011 Agreement and the September 8, 2011 letter generally as the "Settlement Documents."

[10] Underlying Action, R. Doc. 49 (Defendants' Amended Counterclaim).

require the InforMD Parties "and any new company affiliated with one and/or all of them" pay DocRX "a certain percentage of their gross profit on any business line meeting the requirements set forth in the Settlement Agreement."[11]

On May 4, 2016, this court granted the parties leave to conduct additional discovery, including taking the deposition of Mr. Matt Skellan.[12] During a June 7, 2016 conference, counsel for Defendants stated that during the May 31, 2016 deposition of Mr. Skellan, Defendants discovered new information regarding Origin Healthcare Advisors ("OHA").[13] A copy of Mr. Skellan's deposition was provided to the court for review, and the court determined, based on Mr. Skellan's deposition testimony, that it appeared that OHA was receiving revenue for work performed solely by InforMD. Accordingly, this court found good cause to allow additional limited discovery regarding OHA.[14]

In their Motion to Compel, Defendants assert that Smith is the managing member of OHA, and that Guidry, Daigle, and Massengale are all members of OHA.[15] Defendants assert that prior to issuing the Subpoenas to Smith, members of InforMD and OHA advised that they had "none of the requested financial documents of OHA and that Smith is in possession of OHA's financial

---

[11] R. Doc. 1, p. 2.

[12] Underlying Action, R. Doc. 205.

[13] In his deposition, Mr. Skellan states that he was a member of OHA at the same time that he was a member of InforMD and that pharmacy management fees for services performed by InforMD went through OHA. *See*, R. Doc. 9-1.

[14] Underlying Action, R. Doc. 225.

[15] R. Doc. 2, p. 2. By his affidavit, Smith asserts that OHA "was a Delaware corporation formed in December 2014 to provide comprehensive advisory and consulting services to hospitals, physician groups, and pharmacies looking to strengthen their positions, diversify and build stronger diagnostics and products for essential markets, including but not limited to cancer, heart disease, neurodegenerative conditions and rare childhood disease." R. Doc. 8-12, ¶ 3. Smith further explains that Massengale, Guidry, and Daigle were three of eight members of OHA, and that he served as managing member. R. Doc. 8-12, ¶ 4. Per his affidavit, "OHA was dissolved and fully wound-down on or about March 9, 2016." R. Doc. 8-12, ¶ 11.

3

records."[16] Defendants assert that they served Smith with both Subpoenas on September 11, 2016.[17] Counsel for Smith provided objections to the Subpoenas on September 16, 2016, and additionally stated that, based on his objections to the Deposition Subpoena, "Mr. Smith will not be appearing for a deposition on September 21, 2016."[18]

On December 20, 2016, the court held a hearing on the Motion to Compel and the Motion to Quash. During the hearing, counsel for Defendants outlined the history of their efforts to obtain information from Mr. Smith, and pointed out that Smith had not filed his Motion to Quash prior to his previously scheduled deposition. Counsel for Defendants also expressed concern regarding the cost Defendants had incurred in seeking documents from Smith and in attempting to take his deposition, and requested that any deposition of Smith, should the court grant the motion, take place in Baton Rouge, Louisiana. Counsel for Smith then explained that certain documents requested by Defendants do not exist and have never existed, and that Smith was willing to produce other documents by the end of the week of the hearing. Counsel for Smith asserted that under the Federal Rules, Smith's deposition should take place in North Carolina. Finally, counsel for Defendants called Ralph Stevens, who Defendants have retained as an expert to calculate their damages, to explain the necessity of certain information requested in the Document Subpoena. Following questioning by counsel for Defendants and counsel for Smith, the court took the matter under advisement.

---

[16] R. Doc. 2, pp. 2-3.

[17] R. Doc. 2, p. 3. In his Motion to Quash, by footnote, Smith contests the validity of service of the Subpoenas on September 11, 2016. Following a status conference with the court, Smith filed a Notice of Waiver wherein he agreed to "waive any service of process issues raised in Footnote 2 on Page 5 of his Motion to Quash." R. Doc. 14. Accordingly, this court only considers the parties' arguments regarding the scope of the Subpoenas.

[18] R. Docs. 2-5 & 2-6.

4

## II. Law and Analysis

### A. Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

Fed. R. Civ. P. 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). On timely motion, the court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The moving party has the burden of demonstrating that compliance with the subpoena would be unduly burdensome. *See*, *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812,

818 (5th Cir. 2004). To determine whether the third party subpoena presents an undue burden, a court considers the relevance of the information requested, the need for the information, the breadth of the requests, the time period covered by the request, the particularity with which the requested documents are described, and the burden imposed. *Id*. (citing *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)). The court may also consider the expense and inconvenience caused to the third party, and may find undue burden when the subpoena is facially overbroad. *Id*.

### B. Document Subpoena

In his affidavit, Smith explains that OHA engaged InforMD "to provide sales and service training" and "to assist with identifying potential clients for OHA"[19] and that "InforMD periodically invoiced OHA for services provided…."[20] He asserts that "[o]nce initial contact was made, OHA, through Mr. Smith and others, engaged and subsequently provided advisory and consulting services to OHA's clients and prospective clients"[21] and that OHA did not receive any revenue, profits, or payments from InforMD or Massengale, Guidry, and Daigle.[22] Finally, Smith asserts that "OHA did not receive any revenue, profits or payments for work done by InforMD and not by OHA."[23] With regard to the relevancy of the requested information, Smith argues that the Subpoenas "are not targeted to identifying documents and information related to InforMD, to members of InforMD who were also members of OHA, or even to OHA's revenue earned as a result of work performed by InforMD…."[24] Instead, Smith asserts that the Subpoenas seek all of

---

[19] R. Doc. 8-12, ¶ 5.

[20] R. Doc. 8-12, ¶ 8.

[21] R. Doc. 8-12, ¶ 7.

[22] R. Doc. 8-12, ¶ 9.

[23] R. Doc. 8-12, ¶ 10.

[24] R. Doc. 8, p. 7.

6

OHA's financial and governance documents, including documents "pertaining to revenue earned (and vendors paid) by OHA and which were wholly unconnected to InforMD or to those members of InforMD who were also members of OHA" as well as information regarding Smith's personal income and finances.[25]

Defendants' position is that "OHA was set up in order for InforMD and InforMD's principals (Daigle, Guidry, and Massengale) to avoid paying royalties that they owed to [Defendants] under the Settlement Agreement. Matthew Skellan, a member of OHA and InforMD, testified in his deposition that OHA was paid by pharmacies for work performed by InforMD."[26] This court previously reviewed Mr. Skellan's deposition testimony and determined that it contained at least some information that OHA may have been receiving revenue for work performed solely by InforMD. Accordingly, this court allowed additional time for Defendants to proceed with discovery related to OHA. Mr. Smith's affidavit, particularly his assertion that "OHA did not receive any revenue, profits or payments for work done by InforMD and not by OHA"[27] seems to potentially contradict Mr. Skellan's deposition testimony.

The Document Subpoena issued to Mr. Smith seeks 12 categories of documents:

1. All bank statements for any bank accounts maintained by OHA between December 4, 2014 to the present date.

2. All monthly and annual financial statements for OHA between December 4, 2014 to the present date produced in their native format, i.e., Excel, Quickbooks, etc.

3. All detailed general ledgers for OHA from December 4, 2014 to present date produced in their native format.

---

[25] R. Doc. 8, p. 7.

[26] R. Doc. 9, p. 2.

[27] R. Doc. 8-12, ¶ 10.

7

4. All Federal and State tax returns of OHA from 2014 to the present date.

5. All documents reflecting the reconciliation of OHA's general ledger to Federal or State tax returns and/or financial statements, including all journal entries from December 4, 2014 to present date.

6. All sales reports of OHA from December 4, 2014 to present date, broken down by product and month, and a reconciliation of the sales reports to the general ledger.

7. All Operating Agreements or other agreements among the members of OHA.

8. All resolutions of OHA at any time since December 4, 2014.

9. All minutes of meetings of managers or members of OHA at any time since December 4, 2014.

10. All employment agreements, sales/commission agreements, or any other related agreement between OHA and sales personnel (including any employee, contractor, or related person who has made a sale and/or received commissions for making a sale [of] OHA's products or services) from December 4, 2014 to present date.

11. Any and all documents which detail and/or describe any payments of sales commissions made by OHA since December 4, 2014.

12. All K-1s issued to you by OHA from December 4, 2014 to present date.

The court groups Defendants' document requests into four general categories: (1) requests seeking OHA's financial information (request numbers 1-5); (2) requests seeking information regarding sales and/or work performed by OHA (requests 6, 10, & 11); (3) requests seeking information regarding the general operations of OHA (requests 7-9); and (4) requests seeking Mr. Smith's personal financial information (request 12).

In Mr. Smith's September 16, 2016 objections, he asserts generally that each of these requests is vague, overbroad, and seeks documents that are neither relevant nor reasonably

8

calculated to lead to the discovery of admissible evidence.[28] Mr. Smith asserts that he and OHA "are not and have never been involved in the dispute between Mr. Ward, DocRX and Informd [sic]" and that any potential benefit of these documents to Defendants is outweighed by the burden upon him.[29] He further objects based on an assertion that the requested documents are already in Defendants' custody or control, are publically available, or are more appropriately sought from InforMD and/or its members.[30] Mr. Smith additionally objects to the extent certain requests seek "all documents"[31] and asserts that certain requests impose obligations beyond those provided for in the Federal Rules of Civil Procedure based on requested production formats.[32] Finally, Mr. Smith objects to document request number 12 as seeking his personal financial information.[33]

Defendants assert that InforMD and certain InforMD Parties used OHA as an "end run" around their alleged obligation to pay Defendants pursuant to the Settlement Documents. Defendants argue that InforMD, rather than OHA, performed certain work but that OHA was paid

---

[28] *See*, R. Doc. 2-5.

[29] R. Doc. 2-5. *See also*, R. Doc. 8, p. 14 ("OHA has been dissolved and wound-down, and it has no personnel to handle the monumental task of collecting and reviewing the documents requested. Compliance with the Subpoenas would necessarily fall on Mr. Smith as former managing member of OHA. Mr. Smith would be required to personally expend countless hours collecting documents, as well as personally bear the costs and fees associated with attorney review.").

[30] R. Doc. 2-5.

[31] *See*, R. Doc. 2-5, Objections to Requests numbers 5, 6, 7, 8, 9, 10, & 11.

[32] *See*, R. Doc. 2-5, Objections to Requests numbers 2 (requesting production in native format), 3 (requesting production in native format). Smith also objects to Request numbers 4 and 5 based on the requested production format. However, the court notes that these requests do not specify a production format. To the extent Mr. Smith continues to object regarding the "format" of the requested documents, the court notes that Fed. R. Civ. Proc. 45(e)(1)(B) provides that "[i]f a subpoena *does not specify a form* for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable format." (Emphasis supplied). Notwithstanding this provision, the court assumes Defendants and Mr. Smith will work amicably together to determine a production format that will not be unreasonably burdensome.

[33] R. Doc. 8, p. 12. While Mr. Smith has moved to quash the Documents Subpoena, his briefing includes and alternative request that the Subpoenas be modified to require: (1) production of all K-1s issued by OHA for Massengale, Guidry, and Daigle; (2) production of records of payment from OHA to InforMD, to the extent such records exists; and (3) appearance at one deposition regarding such documents, to be scheduled for a mutually agreeable time and place, after all production of documents is completed. R. Doc. 8, p. 2.

for that work. Accordingly, the court finds that Defendants' requests for documents seeking OHA's financial information[34] and general operations as well as OHA's sales and/or work performed are relevant. Moreover, given that OHA existed for little more than a year,[35] and Smith's counsel's assertion that many of the documents requested do not exist, there is no evidence that responding to these requests would be unduly burdensome.

During the December 20, 2016 hearing, counsel for Mr. Smith asserted that the following documents do not exist and have never existed: (1) monthly financial statements as requested in request 2; (2) a reconciliation as requested in request 5; (3) sales reports as requested in request 6; (4) resolutions of OHA as requested in request 8; (5) minutes of meetings as requested in request 9; and (6) employment agreements as requested in request 10. Counsel for Smith further asserted that Smith could produce the following documents by the end of the week of the hearing: (1) a year-end profit and loss statement in response to request 2; (2) federal tax returns with the names of certain OHA members who are not parties to the Underlying Action redacted in response to request 4; (3) operating agreements in response to request 7; and (4) documents detailing or describing any payments of sales commissions made by OHA in response to request 11. In light of these assertions, the court GRANTS Defendants Motion to Compel responses to requests 2, 4, 5, 6, 7, 8, 9, 10, and 11. The court ORDERS Smith to produce the documents responsive to these requests as discussed during the December 20, 2016 hearing no later than Friday, January 6, 2017. To the extent documents responsive to these requests do not exist, have never existed, and/or are

---

[34] Defendants assert that "members of InforMD and OHA have advised that they have none of the requested financial documents of OHA and that Smith (who was in charge of accounting for OHA is in possession of OHA's financial records." R. Doc. 9, p. 8. In support of that assertion, Defendants cite the affidavit of Ms. McCall, counsel for Defendants, wherein she asserts that "[c]ounsel for Guidry and Daigle have asserted that, other than K-1s issued to them by OHA, Guidry and Daigle do not have the financial documentation sought by DocRX and Ward." R. Doc. 9-2, ¶ 10. Defendants also cite the deposition testimony of Mr. Frederick Hutchinson wherein Mr. Hutchinson seemed to confirm that Mr. Smith would have the requested OHA records. R. Doc. 9-4.

[35] R. Doc. 8-12, ¶¶ 3 & 11.

not in Smith's possession, custody, or control, the court ORDERS Smith to submit a verification so stating by Friday, January 6, 2017.

During the hearing, counsel for Smith continued to object to production of any bank statements or general ledgers (request numbers 1 and 3), as well as production of Mr. Smith's K-1 (request number 12). With regard to the bank statements and the general ledger (request numbers 1 and 3), counsel for Smith asserted that these documents contain confidential information regarding other members of OHA as well as information irrelevant to the Underlying Action (including information regarding OHA's mergers and acquisitions consulting work) and that Defendants could obtain the information necessary for their damage calculation via review of other documents. During the hearing, Mr. Stevens explained that OHA's bank statements would be used to verify OHA transactions, and that while the general ledger would likely provide the best information for calculating Defendants' alleged damages, it also likely contained irrelevant information regarding transactions which would not be subject to the Settlement Agreement. Further, Mr. Stevens indicated that he may be able to perform his calculations without general ledger and bank statements. In light of these assertions, the court DENIES Defendants' Motion to Compel production of documents responsive to requests 1 and 3 without prejudice. Following Defendants' review of documents produced in response to requests 2, 4, 5, 6, 7, 8, 9, 10, and 11, Defendants may re-urge a motion to compel production of documents responsive to requests 1 and 3. Any such motion must specifically explain the need for the additional documents in light of the documents already produced.

Finally, with respect to request number 12, the court agrees with Mr. Smith that the request improperly seeks Mr. Smith's personal financial information and that Defendants have "demonstrated no connection between Mr. Smith's personal finances and their clams and defenses

in the [Underlying Action]."[36]  Accordingly, the court DENIES Defendants' Motion to Compel Mr. Smith's responses to request number 12.

### C.  Deposition Subpoena

As discussed above, the court grants Defendants' Motion to Compel Mr. Smith's responses to the Document Subpoena in part.  Accordingly, the court also finds that deposing Mr. Smith following production of the compelled documents is reasonable and relevant.  Pursuant to Fed. R. Civ. P. 44(c)(1) and (c)(1)(A), "[a] subpoena may command a person to attend a…deposition…within 100 miles of where the person resides, is employed, or regularly transacts business in person."  The court understands that Smith resides in North Carolina.[37]  Accordingly, the court finds that Smith's deposition should take place in North Carolina.

Accordingly, Defendants' Motion to Compel Mr. Smith's deposition is GRANTED.  This court ORDERS Smith to appear for his deposition at a mutually agreeable location in North Carolina at a date and time to be set be the parties.

### D.  Defendants' Request for Sanctions

Finally, Defendants have moved for an order "requiring Smith to appear and show cause why he should not be held in contempt for his noncompliance with the Subpoena for

---

[36] R. Doc. 8, p. 12.  The court notes that Smith argues in his Motion to Quash that "compliance would necessarily involve disclosure of documents concerning and communications with Fred Hutchinson, Esq., who wore 'two hats' with respect to OHA.  Mr. Hutchinson both provided consulting services to OHA's clients, as well as served as General Counsel to OHA."  R. Doc. 8, p. 13.  However, Smith's specific objections to the document requests do not include any assertion of privilege.  *See*, R. Docs. 2-5 & 8, pp. 10-12.  Smith also argues that "compliance with the Subpoenas as demanded by Petitioners implicates OHA's confidential and proprietary trade secret business information, including but not limited to sales, customer, and pricing information, as well as OHA's internal valuation methods and due diligence information on clients and prospective clients."  R. Doc. 8, p. 13.  The court questions the extent OHA's sales, customer, and pricing information, as well as internal valuation methods remain confidential and proprietary given the fact that OHA no longer exists and was apparently completely dissolved and wound-down by March 9, 2016.

[37] Per his Declaration, Smith states that he is "a resident of the State of North Carolina, and my address is 722 Forest Hills Drive, Wilmington, NC 28403."  R. Doc. 8-12, ¶ 1.

Deposition…."[38] During the December 20, 2016 hearing, counsel for Defendants requested that, in the event this court ordered Smith's deposition take place in North Carolina, that Smith pay the cost associated with counsel for Defendants travel to that deposition.

Although Smith has waived his objections to service of process for purposes of quashing the Subpoenas, the court does not read that waiver as an admission that Smith was properly served with the Deposition Subpoena on September 11, 2016. Pursuant to Fed. R. Civ. Proc. 45(b)(1), "[s]erving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." In *In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003), the Fifth Circuit explained that "[t]he conjunctive form of [Rule 45] indicates that proper service requires not only personal delivery of the subpoena, but also tendering of the witness fee and a reasonable mileage allowance." Because the mileage allowance was not tendered simultaneously with the witness fee, the *In re Dennis* court found that the subpoena was not properly served.

Here, it appears that Smith was not personally served with the Subpoenas and that the fees for Smith's attendance and mileage were not provided. To the extent the Subpoenas were technically invalid based on failure to pay the fees for Mr. Smith's attendance and mileage, this court has allowed such defects to be cured. *See*, *Adams v. Dolgencorp, LLC*, 2012 WL 1867123, at * 1 (M.D. La. May 22, 2012) (noting that subpoena to non-party "without the witness fee is technically invalid;" however, such defect can be cured). However, in light of these deficiencies, the court will not impose sanctions upon Smith for his failure to appear at his previously scheduled deposition, nor will the court require Smith to pay for Defendants' counsel to travel to North

---

[38] R. Doc. 1, p. 1.

13

Carolina for his to-be-scheduled deposition.  Accordingly, Defendants' request for sanctions is DENIED.

### III.     Conclusion

For the reasons set forth herein, Defendants' Motion to Compel Appearance for Deposition of Non-Party and Responses to Subpoena for Production of Documents and Order to Show Cause[39] is **GRANTED IN PART AND DENIED IN PART**.  P. Cosmo Smith's Cross-Motion to Quash Subpoenas[40] is **GRANTED IN PART AND DENIED IN PART**.

Defendants' Motion to Compel production of documents pursuant to Document Subpoena requests 2, 4, 5, 6, 7, 8, 9, 10, and 11 is **GRANTED**.  The court **ORDERS** Smith to produce documents responsive to these requests as outlined during the December 20, 2016 hearing and herein by Friday, January 6, 2017.  To the extent documents responsive to these requests do not exist, have never existed, and/or are not in Smith's possession, custody, or control, as discussed at the hearing and herein, the court **ORDERS** Smith to submit a verification so stating by Friday, January 6, 2017.

P. Cosmo Smith's Motion to Quash Document Subpoena requests 2, 4, 5, 6, 7, 8, 9, 10, and 11 is accordingly **DENIED**.

Defendants' Motion to Compel production of documents pursuant to Document Subpoena requests 1, 3, and 12 is **DENIED**.  P. Cosmo Smith's Motion to Quash Document Subpoena request 1, 3, and 12 is **GRANTED**.  Following Defendants' review of documents produced in response to requests 2, 4, 5, 6, 7, 8, 9, 10, and 11, Defendants may re-urge a motion to compel

---

[39] R. Doc. 1.

[40] R. Doc. 8.

production of documents responsive to requests 1 and 3.  Any such motion must specifically explain the need for the additional documents in light of the documents already produced.

Defendants' Motion to Compel P. Cosmo Smith's attendance at his deposition is **GRANTED**.  **IT IS ORDERED** that P. Cosmo Smith shall appear for a deposition at a mutually agreeable location in North Carolina, or such other location as the parties may mutually agree, at a date and time to be set be the parties.

Defendants' request for sanctions is **DENIED**.

The court will send a copy of this Ruling and Order to counsel for Mr. Smith by facsimile using the information provided in Mr. Smith's Motion to Quash.  The Ruling and Order shall be sent to Teri M. Sherman, via facsimile at (215) 568-6603, and Robert H. Jessup, via facsimile at (919) 821-7703.

Signed in Baton Rouge, Louisiana, on December 29, 2016 .

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**